**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TYRONE R. HAMMONS, individually
and on behalf of those similarly
situated,

　　　　　Plaintiff-Appellant,

v.

JAMES L. SAFFLE, Director of
Oklahoma Department of Corrections
and/or his successors,

　　　　　Defendant-Appellee.

No. 02-5009

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 00-CV-143-H)

Tyrone R. Hammons filed briefs, pro se.

Philip J. Weiser, University of Colorado School of Law, Boulder, Colorado, for
Plaintiff-Appellant.

Gregory Thomas Metcalfe, Assistant Attorney General, (Machelle Y. Thompson,
Assistant Attorney General, with him on the briefs), Oklahoma City, Oklahoma,
for Defendant-Appellee.

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Plaintiff-appellant Tyrone R. Hammons is incarcerated at the Dick Conner Correctional Center in Hominy, Oklahoma. Defendants-appellees James L. Saffle, et al., implemented prison policies in May 1999 and June 2002, prohibiting in-cell possession and use of oils that Hammons uses for his five daily Muslim prayers. Hammons, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 seeking a declaratory judgment that his First Amendment right to freely exercise his religion was violated. In addition, Hammons sought damages and injunctive relief, costs and fees, and punitive damages in the amount of $100,000 for the alleged violations of his First Amendment rights. Appellees moved for summary judgment. The district court granted appellees' motion, ruling, as a matter of law, that Hammons' First Amendment rights were not violated and that defendant Saffle was entitled to qualified immunity. Hammons appealed and was appointed counsel on appeal.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's grant of summary judgment to appellees on the First Amendment and qualified immunity issues. Because this court holds that, given the unique facts and procedural posture of this case, Hammons should be allowed to have the district court consider whether he has stated a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §

2

2000cc, it **remands** the case to the district court for further proceedings not inconsistent with this opinion.

## II. BACKGROUND

Hammons is a devout Muslim. He abides by the tenets of Islam that purport to advise followers to use Muslim prayer oils to enhance the spiritual value of their five daily prayers. Prior to May 1999, Hammons was allowed to purchase his prayer oils subject to limitations and was allowed to possess and use them in his cell "without incident."

In May 1999, James L. Saffle, the director of the Oklahoma Department of Corrections ("DOC") who has final policy-making authority, enacted a new policy ("1999 Policy") that banned sales of Muslim prayer oils in prison canteens and the in-cell possession and use of such oils by inmates. Muslim inmates could, however, access prayer oils through volunteer chaplains who could provide the oils for inmate use during a religious service. Under the 1999 Policy, however, the volunteer chaplains had to take the prayer oils with them out of the prison facilities when they left. These volunteer chaplains were not available during each of the five daily Muslim prayers. Moreover, all inmates still could purchase "imitation designer colognes and oils" from the prison canteen and keep them in their cells. Hammons provided evidence that these "imitation designer colognes and oils" were not the prayer oils he used during his daily prayers

3

because they were not prepared at the "spirit level." There is no evidence, however, that the prayer oils' chemical basis differs from that of the "imitation designer colognes and oils" that continued to be sold under the 1999 Policy. Evidence also indicates that the "imitation designer colognes and oils" sold in the prison canteen under the 1999 Policy had a stronger scent than the prayer oils Hammons had been able to purchase and use prior to the implementation of the 1999 Policy.

A committee formed to review all DOC policies regarding canteen purchases found, in May 2001, that the "religious oils" used by inmates were in fact "imitation designer colognes/perfumes." Two separate tests conducted with drug-detecting dogs ("drug dogs") determined that the "imitation designer colognes/perfumes" masked the scent of drugs and interfered with the drug dogs' ability to successfully detect drugs. The committee recommended that these substances no longer be sold in the prison canteens or by inmate clubs. Appellees conceded at oral argument that the drug dog tests were not conducted on the Muslim prayer oils used by Hammons.

In response to the committee's recommendations, appellees enacted a new policy in June 2002 ("2002 Policy") which prohibits the sale of both Muslim prayer oils and "imitation designer colognes/perfumes" in the prison canteen or by any inmate group. In addition, inmates are not allowed to use or possess these

4

substances in their cells. Muslim inmates can own a bottle of prayer oil so long as it is used and stored in designated worship areas. Hammons' assertion that Muslim inmates cannot access these designated worship areas five times per day is not disputed by appellees.

## III. DISCUSSION

This court reviews an award of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994). Moreover, this court construes a *pro se* party's pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). If there is no genuine issue of material fact in dispute, this court then determines if the substantive law was correctly applied by the district court. *Sundance Assocs. Inc. v. Reno*, 139 F.3d 804, 807 (10th Cir. 1998). This court reviews a district court's conclusion that a defendant is entitled to qualified immunity *de novo*. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).

**A.      First Amendment Claim**

Hammons argues that his First Amendment right to freely exercise his religion was violated by appellees' 1999 Policy, which prohibited in-cell use and possession of prayer oils while allowing in-cell use and possession of imitation colognes and perfumes.  Hammons does not argue that the 2002 Policy violates his First Amendment right to freely exercise his religion.  Therefore, this court only rules on the constitutionality of the 1999 Policy.

The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Inmates' free exercise rights are, however, subject to prison restrictions rationally related to legitimate penological interests. *Id.* at 349.  In this case, appellees had legitimate penological interests in preventing the use and possession of illegal drugs, in maintaining prison order and safety, in crime deterrence, and in inmate rehabilitation. *See Turner v. Safley*, 482 U.S. 78, 91 (1987).

In addition, appellees' policies were rationally related to their valid penological interests.  In determining whether a governmental policy is rationally related to a legitimate interest, this court weighs several factors. *O'Lone*, 482 U.S. at 350.  First, the court considers whether there is a logical connection between the prison regulation and the asserted penological interest. *Id.*; *Turner*,

482 U.S. at 89-91. Second, the court considers whether alternative means of exercising the religious right in question remain open to inmates. *Turner*, 482 U.S. at 90. Third, the court assesses the impact the accommodation of the right in question would have on guards, other inmates, and on the allocation of prison resources. *Id.* Fourth, the court considers whether any policy alternatives exist that would accommodate the right in question at *de minimis* cost to the prison. *Id.* at 91.

Hammons argues that the 1999 Policy was not logically connected to appellees' penological interests because the policy allowed inmates to access oils through volunteer chaplains but did not allow them to possess or use the oils in their prison cells. This argument fails because allowing inmates to purchase the oils but to only possess them outside their cells in designated, supervised areas did further appellees' penological interests. Constraining prayer oil use to supervised, communal areas decreased the likelihood that these oils would have been used by inmates to mask the odor of drugs or to slip out of handcuffs. Thus, the 1999 Policy was logically related to appellees' penological interests.

Likewise, appellees' failure to initially ban imitation colognes and perfumes, which have a stronger scent than Muslim prayer oils, does not preclude a finding that the 1999 Policy was logical. Supreme Court precedent indicates that appellees can, in some circumstances, implement policies that are logical but

7

yet experiment with solutions and address problems one step at a time. *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 52-53 (1986). These "one step at a time" policies that are held to be logical include, at a minimum, those cases where the final policy is not "under-inclusive." *Playtime Theaters*, 475 U.S. at 52-53. In this case, appellees' 2002 Policy bans in-cell possession of both imitation colognes and perfumes and of prayer oils, and is therefore not "under-inclusive." Although some evidence indicates that Hammons' prayer oils have a weaker scent than that of the imitation designer colognes and perfumes sold in the canteen under the 1999 Policy, the prison administration nevertheless determined that such prayer oils can mask the scent of drugs. Appellees' choice to take the less direct route of banning in-cell possession of prayer oils three years prior to banning in-cell possession of imitation colognes and perfumes does not preclude a holding that the 1999 Policy was nevertheless rationally related to their legitimate penological interests. *See Playtime Theaters,* 475 U.S. at 52-53.

Second, although Hammons could not possess and use his prayer oils in his cell under the 1999 Policy, he had alternative means of exercising his religion. Courts are particularly deferential to the policy judgment of corrections officials in cases where other avenues remain available to inmates for the exercise of the asserted right. *Turner*, 482 U.S. at 90. Prison regulations allowed Hammons to purchase and access his prayer oils through a volunteer chaplain under the 1999

8

Policy. Hammons argues that this alternative is illusory because he could not access and use prayer oils every time he recited his five daily prayers and because the chaplain is biased against Muslims.

In some circumstances, it is indeed true that a prison's reliance on volunteers to provide inmates with religiously mandated items does not suffice to constitute an alternative means for the inmates' exercise of their religion. *See Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002). In *Beerheide*, however, the DOC's purported alternative was a bare assertion that the Jewish community *could* choose to provide the free, religiously mandatory kosher meals to prisoners that the DOC failed to provide. *Id. Beerheide* is distinguishable from the case at bar on two levels. First, the DOC in *Beerheide* merely offered the speculative alternative that the Jewish community could *choose* to provide kosher meals and the district court found that daily provision of kosher food by the community was not feasible. *Id.* In contrast, the DOC in this case has an in-house chaplain and also customarily has volunteer chaplains come into the prison and provide Muslim inmates with their religious oils, albeit not as often as Hammons desires. Second, the DOC in *Beerheide* was effectively forcing Jewish inmates to affirmatively consume non-kosher food that they believed polluted their bodies, imperiled their souls, and was expressly forbidden by their religion. *See id.* at 1186-87, 1192. The *Beerheide* court reasoned that "[i]t is one thing to

9

curtail various ways of expressing belief, for which alternative ways of expressing belief may be found [; i]t is another thing to require a believer to defile himself . . . by doing something that is completely forbidden by the believer's religion." Id. at 1192 (quotation omitted). Unlike *Beerheide*, the DOC in this case merely curtails a way of expressing a belief for which alternative ways of expressing that belief may be found. It does not force an inmate to affirmatively take an action that defiles his body. Appellees' restriction of a religious item that is asserted to merely enhance the religious experience of prayer is not comparable in gravity to the *Beerheide* DOC's forcing inmates to eat food that they believed imperiled their souls because it violated a religious mandate that they not pollute their bodies with non-kosher food. *See id.* This case is therefore distinguishable from *Beerheide*.

Furthermore, Hammons' lack of in-cell access to prayer oils five times per day does not preclude this court's conclusion that an alternative means of exercising his religion existed. *See O'Lone*, 482 U.S. at 351-53. This court has held that an alternative means exists so long as *some* means, albeit not plaintiff's preferred means, of religious exercise is available. *See Clifton v. Craig*, 924 F.2d 182, 183-84 (10th Cir. 1991). In addition, the mere diminishment, as opposed to complete denial, of Hammons' spiritual experience is relevant in determining whether the proffered penological interests suffice to justify the infringement.

10

*Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1213 (10th Cir. 1999). As explained above, Hammons had the alternative of accessing and using his prayer oils through volunteer chaplains. Hammons admits that the denial of in-cell access to prayer oils for each of his five daily prayers "significantly lessen[ed] the] degree in the character of [his] spiritual experience," but did not completely eradicate the value of his prayers. Therefore, this court holds that Hammons had an alternative means of exercising his religion.

Third, accommodating Hammons' need to access his prayer oils five times per day would likely have heavily burdened prison resources and other inmates' religious interests. *See O'Lone*, 482 U.S. at 352-53. Courts must be particularly deferential to the discretion of corrections officials when the accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff. *Beerheide*, 286 F.3d at 1190. Evidence in the record demonstrates that the prison administration attempted to allocate access to its chaplain and religious resources among Muslim inmates and inmates from a variety of other religious denominations. Hammons admits that the chaplain and prison chapel were not available to Muslim inmates five times per day because "too many other religious groups ha[d] to be accommodated." Thus, this is not a case where the difficulties of accommodation stem from the difficulties inherent in implementing any new policy. *Id.* Accommodating Hammons' desire to use prayer oils five

11

times per day would have taken resources away from other religious groups that also needed access to the chapel and chaplain. Therefore, the third factor weighs in favor of a finding that the 1999 Policy was rationally related to a legitimate penological interest. *See O'Lone*, 482 U.S. at 352-53.

Fourth, no evidence in the record suggests that an alternative existed to accommodate Hammons' need to use the prayer oils five times per day at only a *de minimis* cost to appellees' valid penological interests. *See Turner*, 482 U.S. at 89-91. There is no evidence in the record of any alternative that would have allowed Hammons to access his prayer oils five times per day without imposing a heavy burden on prison resources. Hammons does allege, however, that prior to the implementation of the revised policies he was allowed to use his prayer oils in his cell "without incident." The mere lack of incident under the former policy, however, does not establish that such an incident would not occur in the future. The 1999 Policy's ban of prayer oils reflected appellees' informed judgment that such an incident could occur in the future. This court must defer to the prison administration's judgment in analyzing the policy. *See Procunier v. Martinez*, 416 U.S. 396, 405 (1974).

Given the above factors, this court holds that appellees' 1999 Policy was rationally related to a legitimate penological interest. This court therefore

12

**affirms** the district court's grant of summary judgment in appellees' favor on Hammons' First Amendment claim.

Since Hammons failed to show that his clearly established First Amendment rights were violated, this court **affirms** the district court's holding that Saffle is entitled to qualified immunity.[1] *See Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity shields government officials from suit if the officials' conduct does not violate clearly established rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although it was clearly established that Hammons had the general right to the reasonable opportunity to exercise his religion, Hammons failed to prove that his free exercise rights were in fact violated. *See id.*; *Makin*, 183 F.3d at 1210 n.4. Therefore, Saffle is entitled to qualified immunity. *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).

**B.      Religious Land Use and Institutionalized Persons Act claim**

Hammons argues, for the first time on appeal, that the district court should have construed his complaint to assert a claim under RLUIPA, given his *pro se*

---

[1]The qualified immunity issue is not affected by our remand of the RLUIPA issue. On appeal, Hammons seeks injunctive relief under RLUIPA and qualified immunity applies only to claims for damages. *Anderson v. Creighton*, 483 U.S. 635, 646 (1987); *Kikumura v. Hurley*, 242 F.3d 950, 962-63 (10th Cir. 2001).

status in the proceedings below.[2] *Pro se* plaintiffs are required to allege the necessary underlying facts to support a claim under a particular legal theory. *See Bellmon*, 935 F.2d at 1110; *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). In this case, Hammons filed his complaint in February 2000 asserting that the 1999 Policy violated his religious freedom rights. RLUIPA was enacted in September 2000. The district court entered summary judgment for appellees in November 2001. At the summary judgment proceedings, evidence of appellees' proposed 2002 Policy was presented. Hammons, however, never raised a RLUIPA claim. Accordingly, appellees were never given an opportunity to defend against a RLUIPA claim. Neither party brought the newly enacted legislation to the attention of the district court.

Hammons argues on appeal that had the district court applied the new RLUIPA legislation to the facts of his case it would not have granted summary

[2]RLUIPA provides, in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
    (1) is in furtherance of a compelling governmental interest; and
    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). In addition, RLUIPA defines "religious exercise" as "includ[ing] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

14

judgment in appellees' favor. Hammons argues that appellees' 2002 Policy, which prohibits in-cell possession and use of both prayer oils and of non-religious imitation designer colognes and perfumes, violates RLUIPA.

Given the unique facts and procedural posture of this case, the district court never considered whether Hammons' complaint stated a claim under RLUIPA. On remand, the district court should construe Hammons' *pro se* complaint in light of RLUIPA or consider whether to appoint counsel to assist Hammons in presenting the RLUIPA claim. *Marshall v. Columbia Lea Regional Hosp.*, 2003 WL 22230113 at *21 (10th Cir. Sept. 29, 2003). If it is determined that Hammons has stated a claim for relief under RLUIPA, appellees may then raise any appropriate defenses to the RLUIPA claim. *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 12(b).[3]

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's grant of summary judgment in appellees' favor on Hammons' First Amendment claim.

---

[3]Appellees argue that RLUIPA does not bar the grant of summary judgment in their favor because it is unconstitutional. Since a RLUIPA claim was never argued before the district court, however, this court does not reach the question of the statute's constitutionality. *See, e.g., Dist. 22 United Mine Workers of Am. v. Utah*, 229 F.3d 982, 991-92 (10th Cir. 2000). We note that a party challenging the constitutionality of legislation should call the attention of the court to its consequential duty to notify the attorney general of the challenge pursuant to 28 U.S.C. § 2403(a). *See* Fed. R. Civ. P. 24(c); Fed. R. App. P. 44(a).

15

This court **AFFIRMS** the district court's ruling that Saffle is entitled to qualified immunity. This court **REMANDS** the case to the district court for proceedings on a RLUIPA claim not inconsistent with this opinion.