In the

# United States Court of Appeals

### For the Seventh Circuit

No. 06-2453

ROLANDO ORTIZ,

*Plaintiff-Appellant,*

*v.*

MICHAEL DOWNEY and
JEAN FLAGEOLE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 C 2055—**Harold A. Baker**, *Judge.*

ARGUED JANUARY 28, 2009[*]—DECIDED APRIL 1, 2009

Before BAUER, RIPPLE and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Rolando Ortiz, a federal pretrial detainee being held in a state jail, brought this action under 42 U.S.C. § 1983 against Michael Downey, Chief of Corrections at the Jerome Combs Detention Center in Kankakee, Illinois, and Jean Flageole, a nurse at that

---

[*] The defendants in this case were not served with process in the district court and are not participating in this appeal.

facility.[1] He claimed that, in denying his request for certain religious articles, Chief Downey had violated his rights under the First Amendment's Free Exercise Clause, which was made applicable to the states through the Fourteenth Amendment. *See Callahan v. Fermon*, 526 F.3d 1040, 1043 (7th Cir. 2008). He also claimed that Chief Downey had deprived him of access to legal periodicals that he believed necessary to the prosecution of this civil case against jail officials, thereby denying his constitutional right of access to the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *Lewis v. Casey*, 518 U.S. 343, 352-54 (1996).

The district court screened the complaint, *see* 28 U.S.C. § 1915A, and dismissed it for failure to state a claim. Because we believe that this action was premature, we must reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

While awaiting trial on federal drug conspiracy charges, Mr. Ortiz was detained at the Jerome Combs Detention

---

[1] Mr. Ortiz's complaint alleged that Ms. Flageole had been deliberately indifferent to his serious medical needs. The district court dismissed that claim, and Mr. Ortiz does not challenge that dismissal in this appeal.

Center in Kankakee, Illinois.[2] He asked officials there to "provide a chaplain or implement religious services . . . . [o]r explain to me how to practice my Roman Catholic beliefs in your jail without mass, communi[o]n, or rosary prayer beads?" R.1 at 24. Chief Downey replied, "We are able to provide non-denominational services, there is no jail requirement to provide a service for every religion. If you would like to meet with a priest or deacon of the Catholic faith, let me know." *Id*. In another request during the same period, Mr. Ortiz wrote, "I am a Roman Catholic and I require a rosary and prayer pamphlet or booklet to pray so I need you to provide those two things for me." R.1 at 27. Chief Downey responded, "I am also a Catholic & you do not need a rosary and pamphlet or booklet. If you would like a priest to come in to pray with you, that can be arranged." *Id*. A few months later a priest met with Mr. Ortiz for ten minutes but "[h]e never came back." R.36 at 6. Mr. Ortiz never received the requested rosary, pamphlet or booklet.

**B.**

During this same period, Mr. Ortiz requested, and was denied, various legal accommodations. He asked that jail officials copy, at no charge, approximately fifty legal documents that pertained either to his pro se civil suit

---

[2] These facts are taken from Mr. Ortiz's complaint and are presumed true for purposes of reviewing the district court's dismissal under section 1915A. *Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005).

against his jailers or to his criminal prosecution. He was represented by counsel in the criminal case, but was proceeding pro se in the civil matter. In reply, jail officials told him that he would be charged $1.00 per page and also commented that "[t]here is no legal obligation for this department to make copies for you for a frivolous lawsuit. If you need copies of legal work for your criminal case, we will assist you in any way we can." R.1 at 50. Chief Downey later explained in writing that copies of files relevant to Mr. Ortiz's criminal case would be provided at no charge. On another occasion, Mr. Ortiz requested a notepad, envelopes and stamps "to do legal work," to which officials responded by asking him if he had money in his commissary account. R.1 at 18, 20.

When Mr. Ortiz's relationship with his appointed criminal counsel soured in early 2006, Mr. Ortiz attempted to research his criminal case on his own. He asked jail officials whether the detention center had "a federal law library to research case law post-*Booker* or any Seventh Circuit decisions of federal courts or any case law or library at all." R.1 at 9. An official responded, "No, we don't have a law library." *Id*. Mr. Ortiz admits that he had access to at least "8 state law books and 2 federal law books," R.17 at 4, but not the particular federal sentencing guidelines manual that he sought.

Mr. Ortiz also tried to subscribe to various legal periodicals, but that request was denied as well. A note attached to Mr. Ortiz's grievance explained, "newspapers not accepted. . . . That also goes for magazines." R.1 at 12.

## C.

In March 2006, Mr. Ortiz brought this action against Chief Downey, alleging that Chief Downey denied him access to courts, prevented him from receiving legal and nonlegal reading materials, and unduly restricted his ability to practice his faith. At the section 1915A screening hearing, Mr. Ortiz elaborated on his claims and answered various questions put to him by the district court. When the district court asked why he needed a law library, Mr. Ortiz replied: "I really want to put a motion in. I feel [my appointed criminal attorney] is ineffective counsel and I don't know how to proceed." R.36 at 3. The court explained that a letter to the court simply stating "I want a different lawyer" would suffice and the court would construe it as a motion. *Id*.

When screening the complaint, the district court dismissed it for failure to state a claim upon which relief could be granted. *See* 28 U.S.C. § 1915A. With respect to the free-exercise claim, the court noted that prisoners are entitled to practice their religion so long as it does not interfere excessively with prison or jail administration. The district court also noted, however, that prison administrators may restrict that right if the restriction is reasonably related to legitimate penological interests. The court concluded: "There is nothing in the record that shows Downey violated the plaintiff's right to practice his religion. Downey accommodated the plaintiff by providing a Catholic priest. Downey had no obligation to supply the plaintiff with rosary beads or a prayer booklet or pamphlet." R.6 at 4.

As for Mr. Ortiz's access-to-courts claim, the court concluded that, even without a law library, Mr. Ortiz enjoyed unrestricted access to the courts:

> The plaintiff claims that because he does not have access to a law library he does not know how to file the motion. The court finds that the plaintiff does not need a law library to file that type of motion. This plaintiff, apparently, is very resourceful and apparently knows how to file documents with the court. This plaintiff has submitted every document necessary to open up the instant civil lawsuit. He filed a petition to proceed in forma pauperis, the required trust fund ledgers and his complaint, without the benefit of a law library. Further, when in criminal court, the plaintiff simply could have orally told the judge that his attorney was ineffective and he could have orally requested a new attorney. Additionally, the plaintiff could have simply written a letter to the judge. In fact, the plaintiff could have written his attorney and could have requested that he file and/or present the motion to the court. Pretrial detainees are entitled to counsel—that is their access to the courts.

*Id*. at 3 (citations omitted).

Finally, the court dismissed Mr. Ortiz's claim regarding access to reading materials. It reasoned that Chief Downey was not personally responsible for the deprivation because another officer, not Chief Downey, had responded to Mr. Ortiz's request. *Id*. at 3-4.

## II

## ANALYSIS

### A.

After oral argument in this case, we asked counsel about Mr. Ortiz's present location. Counsel informed us that he is no longer at the Jerome Combs Detention Center. He currently is incarcerated at the Federal Correctional Institution in Pekin, Illinois, where he is serving a term for his federal conviction for possessing a controlled substance with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Therefore, he is no longer under the jurisdiction and control of the defendants. Nor is there any reasonable possibility that he will be returned to their custody. The federal government had arranged to house Mr. Ortiz at the Kankakee facility pending the disposition of his federal charges. Today, as a result of those charges, he is incarcerated in a federal facility and therefore subject to the regulations of that federal facility and under the sole custody of its warden.

Because of this change in circumstances, Mr. Ortiz's prayers for prospective relief are moot. If we were to reverse the judgment of the district court and remand this matter for further proceedings, the district court could grant no prospective relief to Mr. Ortiz against these defendants. There is no realistic possibility that Mr. Ortiz will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here. Any relief that our judgment might permit would be purely speculative in nature. *See Preiser v. Newkirk*, 422 U.S. 395, 401-04 (1975) (holding that a

prayer for prospective relief on a claim of unconstitutional transfer was moot because the prisoner had been returned to the initial facility with no foreseeable effect on future parole decisions); *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991) (concluding that past exposure to illegal conduct at a prior facility, without threat of repetition, did not present a pending case or controversy that might warrant injunctive relief). Moreover, as in *Preiser*, we shall not assume without reason that Mr. Ortiz might once again find himself an inmate of the same local institution and find himself subject to the restrictions of which he complains here. *See Preiser*, 422 U.S. at 402-03.

**B.**

Because Mr. Ortiz's complaint also contains claims for damages for the alleged past infringements of his constitutional rights, however, his entire case is not moot. His damages claims remain alive. Accordingly, we now shall turn to the merits of those claims.

**1.**

Mr. Ortiz submits that he adequately pleaded a free-exercise claim. In his view, the district court did not apply correctly the framework established in *Turner v. Safley*, 482 U.S. 78 (1987). He submits that the district court, acting solely on the basis of his pro se pleading and without any

discovery, should not have held, as a matter of law, that a single visit by a priest in a four-month period fulfilled the detention center's obligation not to burden substantially the practice of his religion. Mr. Ortiz also submits that the district court should not have assumed, prior to the submission of any evidence, that Chief Downey's refusal to provide the requested religious articles was reasonably related to legitimate penological interests. Mr. Ortiz claims that Chief Downey never proffered a reason for the denial other than his own "personal theological views regarding Catholic worship." Appellant's Br. 20. Without more, Mr. Ortiz argues, the district court could not have determined fairly whether Chief Downey's refusal was supported by legitimate penological objectives.

We consider de novo the dismissal of Mr. Ortiz's complaint during the screening process conducted under 28 U.S.C. § 1915A. *See Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005). Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987); *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Tarpley v. Allen County, In.*, 312 F.3d 895, 898 (7th Cir. 2002). Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest. *See Turner*, 482 U.S. at 89. Legitimate penological interests include security and economic concerns. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). When officials assert such a concern to justify the curtailment of an inmate's religious exercise, we must consider four factors in determining whether the challenged restriction is constitutional: (1) whether

the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004) (citing *Turner*, 482 U.S. at 89-91).

In this case, the district court assumed, on the basis of the complaint alone, that Chief Downey had a legitimate penological reason to deny the rosary and the prayer booklet or pamphlet that Mr. Ortiz sought, and that dismissal of his claim was therefore appropriate. *See Turner*, 482 U.S. at 89; *Westefer*, 422 F.3d at 574. As the grievances and the replies attached to the complaint show,[3] Chief Downey responded to Mr. Ortiz's request by stating that he is also a Catholic and, for that reason, he knows that these items are not vital to worship. Such an assertion is not sufficient. A person's religious beliefs

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 at 450 (2004) ("The district court obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material.").

are personal to that individual; they are not subject to restriction by the personal theological views of another. *See, e.g., McCreary County, Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 875-76 (2005) (noting that religious choice is "the prerogative of individuals under the Free Exercise Clause"). At this pre-discovery stage of the proceedings, there is no evidentiary record from which the district court could conclude that Mr. Ortiz's requests posed a security risk to the institution or were incompatible with his detention. The district court cannot assume that these barriers exist. Notably, with respect to any economic impediment to providing the requested items, it is not even clear from the complaint that Mr. Ortiz expected the requested items to be provided free of charge. Furthermore, although Mr. Ortiz eventually did see a priest on one occasion, that accommodation was distinct from his request for the religious articles and an opportunity to attend Mass in order to sustain the practice of his religion on a regular basis.

We cannot, of course, make any determination about the ultimate merits of the allegations contained in the complaint, nor should our decision today be read as suggesting an outcome. We hold only that Mr. Ortiz has stated a claim that is "plausible on its face": that Chief Downey denied him religious articles and the opportunity to attend Mass without adequate penological justification. Therefore, at this stage, the complaint should not have been dismissed. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008).

**2.**

Mr. Ortiz also contends that the allegations in his complaint support a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). RLUIPA prohibits prisons that receive federal funds from imposing a substantial burden on a prisoner's religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means. *See* 42 U.S.C. § 2000cc-1(a); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).

Mr. Ortiz's complaint alleges that Chief Downey's actions imposed a substantial burden on his ability to exercise his religion; this is all that is required to state a claim under RLUIPA. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (holding that a prisoner who complained that officials substantially burdened his religious exercise advanced a claim under RLUIPA "because his complaint and subsequent filings provided appellees with 'fair notice' of that claim, even though the statute was not cited in the complaint itself"); *Hammons v. Saffle*, 348 F.3d 1250, 1258-59 (10th Cir. 2003) (remanding with instructions to construe a pro se prisoner complaint in light of RLUIPA even though the complaint alleged only a violation of "his religious freedom rights"). Although Mr. Ortiz's complaint does not mention RLUIPA specifically, this is not an obstacle to his claim, particularly in light of his status as a pro se litigant. *See Alvarez*, 518 F.3d at 1157-59; *Hammons*, 348 F.3d at 1258-59. Our sister circuits have held, and we

agree, that a prisoner who does not plead a RLUIPA violation specifically, but does allege unconstitutional restrictions on religious practice, states a claim under the statute. *See Alvarez*, 518 F.3d at 1157-59; *Hammons*, 348 F.3d at 1258-59. Litigants need not plead legal theories, and the factual allegations in Mr. Ortiz's complaint provide fair notice to the defendants of the necessary elements of a RLUIPA claim. *See, e.g., Jogi v. Voges*, 480 F.3d 822, 826 (7th Cir. 2007).

Accordingly, on remand the district court should permit Mr. Ortiz to amend his complaint to add a specific claim under RLUIPA, as he is entitled to do by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course . . . before being served with a responsive pleading.").

## C.

We now turn to the dismissal of Mr. Ortiz's access-to-courts claim. He acknowledges that his appointed counsel provided him access to the courts in his criminal case. He submits, however, that such access does not carry over to his civil case. Consequently, he contends, he still has need of access to a law library and to legal periodicals.

The Constitution protects a prisoner's right of access to the courts; state actors must respect that right by not impeding prisoners' efforts to pursue legal claims. *Lewis v. Casey*, 518 U.S. 343, 349-54 (1996); *Tarpley*, 312 F.3d at 899; *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). That right is violated when a prisoner is deprived of such

access and suffers actual injury as a result. *Lewis*, 518 U.S. at 350.

Mr. Ortiz cannot prevail on his access-to-courts claim. We agree that the assistance of counsel in his criminal case did not diminish his right to adequate legal resources for the purpose of pursuing his civil suit. *See Tarpley*, 312 F.3d at 899 (observing that access to courts via appointed counsel in a criminal matter does not guarantee or even facilitate access to courts in an unrelated civil matter). Nevertheless, Mr. Ortiz did not allege in his complaint that the alleged deprivations have caused him actual injury, and the Supreme Court held in *Lewis* that such an allegation in necessary. *See Lewis*, 518 U.S. at 350;[4] *see also Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) (holding that a prisoner must allege that "a lack of access to legal materials has undermined," or caused to founder, "a concrete piece of litigation"); *see also Christopher v. Harbury*, 536 U.S. 403, 413-15 (2002). Although fact pleading is unnecessary, *see Pratt v. Tarr*, 464 F.3d 730, 731-32 (7th Cir. 2006), a prisoner's complaint must "spell out, in minimal detail, the connection between the alleged

---

[4]  Mr. Ortiz acknowledges this deficiency but insists that courts "waive the showing of detriment where a plaintiff alleges a direct, 'substantial and continuous[]' . . . limit on legal materials." Appellant's Br. 32 (quoting *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992)). The Supreme Court in *Lewis*, however, specifically disapproved that exception. *See Lewis*, 518 U.S. at 353 n.4. The Court explained that waiver of the actual-injury requirement was inappropriate even in cases involving substantial, systemic deprivation of legal materials.

denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Mr. Ortiz's complaint does not articulate any such connection.

### Conclusion

For these reasons we reverse the order dismissing Mr. Ortiz's complaint and remand for further proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.

REVERSED and REMANDED