**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 8, 2009[*]
Decided December 8, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-2541

| | |
|---|---|
| CARL DESIMONE,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>BRYAN BARTOW, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Eastern District of Wisconsin.<br><br>No. 08-C-638<br><br>William C. Griesbach,<br>*Judge.* |

**O R D E R**

Carl DeSimone, formerly a civilly committed patient at the Wisconsin Resource Center, sued WRC employees under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1(a), and under 42 U.S.C. § 1983 for violations of the First Amendment as incorporated by the Fourteenth Amendment. The district court granted summary judgment against DeSimone, and we affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

The facts underlying DeSimone's lawsuit are largely undisputed. In early 2006, he informed WRC that he had begun practicing a religion called Yahwism, which he understands to require adherents to "separate" themselves from the world of sin, a feat sometimes accomplished by living wholly apart from others. Living apart from others was impossible in the care of WRC, but DeSimone believed he could maintain a separate realm of thought by writing in journals through use of a code (to prevent fellow patients from reading his entries and learning his secrets). The record shows that DeSimone had been maintaining encoded journals as early as 1997, even before he had embraced Yahwism. DeSimone obtained the codes relevant to this lawsuit from Internet printouts provided by a teacher and a social worker who agreed to help him pursue his interest in the mythical city of Atlantis. One code was an alphabet–"Atlantean"–designed to accompany a language constructed for the Disney film *Atlantis: The Lost Empire*. Another was "Lingua Anquietas," an alphabet created for a fictional race of "Ancients" in the television shows *Stargate SG-1* and *Stargate: Atlantis*. DeSimone learned how to transliterate English words into the fictitious alphabets.

In early 2008 a routine search of DeSimone's cell revealed two journals, two notepads, a letter, and seven loose sheets of paper, all containing writing in DeSimone's chosen codes. Staff confiscated the journals and loose paper, gave DeSimone a written explanation that encoded writing was considered a security risk and therefore deemed contraband, and forbade him from continuing to write in code. DeSimone unsuccessfully filed internal grievances seeking the return of his papers and the lifting of the ban.

He then sued in federal court, seeking monetary damages and injunctive relief. First, DeSimone claimed that WRC violated RLUIPA by banning code and thereby increasing the likelihood that any patients who stole his journals could learn his thoughts and prayers–a scenario that, he said, made it impossible to follow the religious commandment to live separately from others. Second, DeSimone argued that the ban of code, for the same reasons, violated his First Amendment right to the free exercise of his religion.

The district court granted summary judgment for WRC, ruling that DeSimone had not produced evidence of a substantial burden on his religious exercise as required by RLUIPA and, in the alternative, that WRC had demonstrated that it pursued the least restrictive means of furthering its compelling interest in institutional security. The court further ruled that, because "RLUIPA provides more generous protection than the First Amendment," DeSimone could not possibly succeed on his constitutional claim.

On appeal, DeSimone argues that the district court erred by granting summary judgment on the RLUIPA claim because the rules preventing him from using his favored

codes substantially burdened his religious exercise. He also challenges the court's alternative rationale that the ban furthered a compelling government interest or constituted the least restrictive means.

RLUIPA forbids institutions that receive federal funds from substantially burdening patients' exercise of religion—even by rules of general applicability—unless the burden is the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc-1(a); *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005); *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009). A substantial burden exists only where a government action "bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)). Only upon plaintiffs' showing of a substantial burden on their religious exercise will the evidentiary burden shift to the institution, which must then show that the challenged rule is the least restrictive means of pursuing a compelling government interest. *See Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).

As the district court recognized, DeSimone's RLUIPA claim fails because he produced no evidence of a substantial burden on his religious exercise. DeSimone says that WRC's ban on encoded writing infringes upon his religious exercise—that of keeping his thoughts "separate" from sinners—because other patients might obtain and read his journals, but speculation of this sort does not constitute the sort of evidence necessary to establish a substantial burden. *See Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (noting the insufficiency of a plaintiff's "unreasoned say-so" to create a triable issue). Thus, the district court did not err in granting summary judgment on DeSimone's RLUIPA claim.

Finally, DeSimone argues that the district court erred when it ruled against him on his First Amendment claim, for essentially the same reasons he says it erred on the RLUIPA claim. Although the First Amendment right to exercise one's religion extends to institutionalized persons, *Ortiz*, 561 F.3d at 669, a plaintiff must show a violation of that right by demonstrating a substantial burden on religious exercise; indeed, RLUIPA's "substantial burden" test was imported from First Amendment jurisprudence. *See Nelson*, 570 F.3d at 878 n.5; *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006). DeSimone's failure to establish a substantial burden on his religious exercise therefore dooms not only his RLUIPA claim, but his First Amendment claim as well.

Accordingly, the judgment is AFFIRMED.