**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2016[*]
Decided June 2, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-3639

| | |
|---|---|
| AMAN DEEP SINGH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 14-CV-837 |
| | |
| ADAM GEGARE, et al., | William E. Duffin, |
| *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

After his release from prison in Wisconsin, Aman Deep Singh brought this action under 42 U.S.C. § 1983, principally claiming that more than a dozen guards and administrators at two different facilities had penalized him for engaging in protected speech, impeded his access to the courts, and deprived him of liberty and property without due process. The district court (a magistrate judge presiding by consent) screened Singh's complaint, *see Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999), but did not address our decisions stating that unrelated claims against unrelated defendants

_____

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

cannot be brought in the same complaint. *See* FED. R. CIV. P. 18, 20; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). The action proceeded to summary judgment, which the district court granted in favor of the defendants on all claims. Singh appeals, but we uphold the district court's decision.

Except as noted, the following facts are undisputed. In June 2012 a staff member at Sturtevant Transitional Facility obtained a letter that Singh had written months earlier to a prisoner at another facility. In that letter Singh boasted that he could escape easily from Sturtevant because his prison job required that he be outside the perimeter fence for an hour each day. He hadn't tried to escape, Singh explained, because he thought that his chances of winning his pending direct appeal or being granted work release were good. But without those prospects, Singh continued, "I would be across the street and on a train and see you never DOC!" He added, "I really think I might walk off if I don't get some love on appeal." In addition to this talk of escape, Singh bragged that his typing skills had led other inmates to pay him for typing documents. He also lamented that no one would play him in chess for canteen items after he beat another inmate multiple times, betting a dollar on each game.

On the basis of this letter, a correctional officer issued Singh a conduct report for attempted escape, WIS. ADMIN. CODE §§ DOC 303.26; 303.05, running an enterprise, *id*. § DOC 303.36, and gambling, *id*. § DOC 303.61. At his disciplinary hearing Singh protested that his talk of escape wasn't serious, particularly since after writing the letter he had quit the job that had allowed him to go outside the fence. He also denied ever gambling or accepting payment for typing. Singh was found guilty of all three infractions, however, and given 210 days' disciplinary segregation. Afterward, his custody classification was revised, and he was transferred to Racine Correctional Institution, a medium-security prison. Singh served his time in disciplinary segregation at Racine (he was released after 105 days). Inmates in disciplinary segregation are permitted to shower three times a week, participate in recreation for three hours weekly, and leave their cells for medical appointments, visits, and legal matters.

While in segregation Singh repeatedly demanded, but never received, access to his legal papers. As a result, he says, he was unable to serve the state's lawyer with a petition for a writ of certiorari, which a state judge then dismissed without prejudice on July 9, 2012. Additionally, according to Singh, the lack of access to his legal papers and a time limit on his use of the law library had delayed his filing of postconviction action.

Singh remained at Racine after his release from disciplinary segregation. In March 2014 he was caught with 123 packets of drink mix, which inmates may use in the dining hall but cannot take to their cells. At a disciplinary hearing, the packets were deemed contraband, and Singh was given 10 hours of extra work assignments and ordered to pay restitution of $10. Then in April 2014 a staff member caught Singh in the laundry area with assorted canteen items—emery boards, stamps, and envelopes—wrapped in a towel. The items, worth $4.50 in total, were found after a disciplinary hearing to be contraband and never returned.

As noted, Singh's complaint, filed after his release from prison, included multiple claims. First, he alleged that he was disciplined at Sturtevant (and then sent to Racine) without any evidence to support the charges of attempted escape, running an enterprise, and gambling. The real motive for those charges, Singh asserted, was to punish him for engaging in protected speech. Singh also alleged that he was denied access to the courts while confined in disciplinary segregation at Racine, since he wasn't given access to his legal papers or allowed more time in the law library. Additionally, concerning the incidents at Racine in March and April 2014, Singh alleged that the deduction of $10 in restitution from his trust account and the confiscation (and disappearance) of his canteen items had deprived him of due process.[1]

In granting summary judgment for the defendants, the district court reasoned that, even if Singh had a liberty interest in avoiding 105 days in disciplinary segregation, the intercepted letter provided "some evidence" to support the discipline imposed at Sturtevant. And, the district court added, the boasts of rule violations in Singh's letter were not protected speech, and thus, as a matter of law, confining him in disciplinary segregation and transferring him to a more-secure facility could not have violated the First Amendment. As for Singh's claim that he was denied access to the courts, the district court concluded that Singh lacked evidence of injury. Finally,

---

[1] Singh's complaint also included an Eighth Amendment claim about the living conditions in his segregation cell at Racine, and accused several defendants at Racine of impeding his practice of Sikhism, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5. On appeal Singh does not discuss the Eighth Amendment or the Free Exercise Clause, so we deem those constitutional claims abandoned and do not discuss them. And since injunctive relief was the only remedy available to Singh under RLUIPA, any statutory claim already had become moot when he was released from prison. *See Sossamon v. Texas*, 563 U.S. 277, 288 (2011); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

concerning Singh's allegations that he was deprived of property without due process, the court characterized the defendants' actions as "random and unauthorized," for which Wisconsin provides adequate, postdeprivation remedies.

On appeal Singh first challenges the district court's conclusion that, as a matter of law, there was sufficient evidence to discipline him for the infractions at Sturtevant. Yet this procedural issue is irrelevant unless Singh had a constitutionally protected liberty interest in avoiding 105 days of confinement in punitive segregation, which he did not. A relatively brief stint in punitive segregation might arguably constitute a deprivation of liberty "depending on the conditions of confinement" and whether "additional punishments" also were imposed. *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015). But in a case involving a period of punitive segregation nearly twice that of Singh's, we concluded that no liberty interest had been at stake because the inmate was allowed yard time and weekly showers and was not deprived of all human contact or sensory stimuli. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013). Singh's confinement was much shorter and less restrictive, as he was permitted several hours of yard time and several showers each week, as well as authorized to leave his cell for visits and appointments.

Even if Singh's time in disciplinary segregation had been long enough and sufficiently severe to trigger protection under the Due Process Clause, his intercepted letter was itself "some evidence" of all three infractions: plotting an escape, accepting payment for typing, and betting on chess games. Greater evidence wasn't required for due process to be satisfied. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Moreover, disciplining Singh and transferring him to Racine because of his letter did not penalize Singh for corresponding with another inmate. Singh's boasts of an escape plan, a prohibited typing business, and gambling successes were not consistent with the legitimate penological interests of the prison and, thus, were not protected speech. *See Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *see generally Turner v. Safley*, 482 U.S. 78, 89 (1987).

Singh also challenges the district court's conclusion that he cannot hold the defendants accountable for denying him access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351–52 (1996); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). In his appellate brief Singh discussed only the petition for certiorari, which was dismissed for failure to serve the state's lawyer (Singh does not mention his postconviction action). The district court did not see, nor do we, any causal relation between the dismissal of Singh's

petition for certiorari and his inability to access his legal papers while in segregation. As the district court noted, the deadline for service in that case, *see* WIS. STAT. § 801.02(1), (5), had passed even before Singh sought access to his legal papers.

All that remains is Singh's claim that he was deprived of property without due process when he was ordered to pay $10 for the cache of drink-mix packets and when the canteen items worth $4.50 were confiscated. He argues that the district court incorrectly characterized these deprivations as "random and unauthorized," *see Parratt v. Taylor*, 451 U.S. 527, 541 (1981), when, in fact, they were the outcome of the disciplinary hearing process itself, and thus the result of a policy. But in making this argument, Singh highlights the principal fault in his claim: His complaint isn't that he was deprived of process but that he disagrees with the outcome of his hearings. He does not deny that he had notice of the charges against him, that he received a hearing in each instance, and had an opportunity to defend himself. We conclude that there was no denial of due process. *See Campbell v. Miller*, 787 F.2d 217, 223 (7th Cir. 1986).

Accordingly, the judgment of the district court is AFFIRMED.