NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2019[*]
Decided January 9, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1903

| | |
|---|---|
| DANIEL K. LASHBROOK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | South Bend Division. |
| *v.* | |
| | No. 3:17-cv-276-RLM-MGG |
| WILLIAM HYATTE, | |
| *Defendant-Appellee*. | Robert L. Miller, |
| | *Judge*. |

## O R D E R

Daniel Lashbrook, an Indiana inmate, alleged that the warden violated the First Amendment by restricting his access to unmonitored telephone calls with his attorney. The district court dismissed the complaint for failure to state a claim, concluding that the prison policy was reasonably related to legitimate penological interests. Because we conclude that this dismissal was premature, we vacate the judgment and remand for further proceedings.

---

[*] We agreed to decide the case without oral argument because the appellate briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

We relay the facts as alleged in the complaint, giving Lashbrook the benefit of all reasonable inferences. *See Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 682 (7th Cir. 2018). Miami Correctional Facility (in Miami County, Indiana) used to maintain a policy that allowed inmates to preschedule unmonitored telephone calls with their attorneys. Inmates were escorted at a prearranged time to a private room for their call while prison staff remained outside. That practice changed in December 2015. Citing "resourcing concerns" (a phrase Lashbrook attributes to the prison), the prison disallowed prescheduled attorney calls and eliminated the private rooms. The new practice directs inmates to use a bank of telephones on the dormitory floor in common spaces open to both inmates and correctional staff who can overhear the calls. Moreover, because the new system prohibits prescheduled calls, inmates often have to wait for a phone to become available, making it difficult to set a time to talk with lawyers.

Lashbrook filed this action under 42 U.S.C. § 1983 against the warden, asserting that the prison's telephone practice unreasonably restricts his First Amendment right to "freely and efficiently communicate" with his attorney. The warden promptly moved to dismiss the complaint. Relying on the Supreme Court's holding in *Turner v. Safley*, 482 U.S. 78, 89 (1987), he argued that the judge should defer to the prison because the policy was reasonably related to a legitimate penological interest. Lashbrook countered that based on *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), the prison's telephone policy is unconstitutional because it does not further an important governmental interest unrelated to the suppression of speech and the infringement of his right to freedom of speech is greater than necessary to protect any governmental interest.

The judge dismissed Lashbrook's claim with prejudice. In an oral ruling, the judge determined that *Martinez* is inapplicable because it addresses only "correspondence going out of the prison" and Lashbrook was contesting a policy that regulates telephone conversations, which are "inherently two-way communications" that need to be governed by different standards. Applying *Turner*, the judge ruled that conserving prison resources is a legitimate governmental objective and Lashbrook had alternative means of communicating privately with his attorney—through mail and in-person visits. The judge further concluded that accommodating Lashbrook's request for private phone calls would "limit the protection that correction officers can provide to the other inmates" and therefore does not present a "ready alternative" that the prison could implement.

The First Amendment protects a prisoner's right to consult with an attorney, and an important part of the right to legal advice is confidentiality. *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000) (citing *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)). But the First Amendment does not mandate "unrestricted and unlimited private contacts" with counsel, and prisons may restrict prisoner contact with counsel so long as the restrictions reasonably relate to legitimate penological interests. *See Turner*, 482 U.S. at 89; *Massey v. Wheeler*, 221 F.3d 1030, 1036 (7th Cir. 2000). No additional constitutional protection is afforded prisoners' communication involving legal advice because that would require a valuation of the communication's content. *Shaw v. Murphy*, 532 U.S. 223, 230 (2001).

On appeal Lashbrook challenges the dismissal of his complaint on grounds that the judge wrongly applied *Turner* rather than *Martinez* to evaluate his First Amendment claim. (Lashbrook now proceeds pro se, his lawyer having withdrawn after filing the appellate brief.) He contends that *Turner* is inapplicable because it concerns regulated activity (inmate-to-inmate correspondence) that threatens prison security and order, and no such security interest is implicated here—a case involving only telephone calls with an attorney. Because this case more closely resembles *Martinez* in which the regulated activity (outgoing personal correspondence from prisoners) did not pose a threat to prison order, Lashbrook maintains that *Martinez* supplies the more appropriate standard.

This contention reads *Turner* too narrowly. *Turner* is not limited to regulations implicating prison security: the prison might have a legitimate penological interest in restricting activity that affects prison security, but a security concern is never *required*. *See Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (concluding that a prison's economic interest in saving staff resources is legitimate under *Turner*). *Turner* holds that prisoners' constitutional claims must be reviewed under a "unitary, deferential standard," *Shaw*, 532 U.S. at 228–29, under which four factors are relevant: (1) whether the restriction is rationally related to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards, inmates, and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Turner*, 482 U.S. at 89–91. The first of these four factors (the rational relation to a legitimate interest) is the principal factor. *See Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015). The Supreme Court has since clarified that *Martinez* should be "limited to regulations concerning outgoing correspondence." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *see also Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006) (recognizing that *Martinez* was overturned in

part but remains the standard for cases involving outgoing mail); *Massey*, 221 F.3d at 1037 (applying *Turner's* reasonableness inquiry to restrictions on a prisoner's private phone contacts with counsel).

Recognizing that *Turner* provides the appropriate analytical framework here, we turn to the judge's application of the *Turner* factors—and specifically the judge's conclusion that the prison's telephone policy is reasonably related to a legitimate penological interest. At the outset we note that the application of the *Turner* factors may require defendants to produce evidence that justifies the policies. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *see also Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (concluding that it was premature at the pleading stage to assess whether the prison's budgetary reasons justified the restrictions on religious practice). Based only on Lashbrook's complaint, the judge assumed that the prison had a legitimate penological reason to restrict his confidential calls with his attorney and that he had alternative means to communicate with counsel. But at this prediscovery stage, there is no evidentiary record from which the judge could evaluate the prison's resource concerns, the impact on prison staff of Lashbrook's request for confidential attorney–client calls, or the viability of other means of communicating with his attorney. *See Ortiz*, 561 F.3d at 669.

We are not persuaded by the warden's assertion that Lashbrook's complaint alone is a sufficient basis on which to resolve the *Turner* inquiry. The cases that he relies on were all decided at the summary-judgment stage. *See Jackson*, 509 F.3d at 391–92 ("[G]iven the uncontested evidence," the prison's ban of commercial photographs was rationally related to preserving prison resources.); *see also Lindell v. Frank*, 377 F.3d 655, 659 (7th Cir. 2004) (determining that a prison's ban on publication clippings was reasonably related to a legitimate interest in saving staff resources to screen for hidden messages). "Specific facts are not necessary" at the pleading stage. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In support of one of the judge's key determinations, the warden also posits that Lashbrook must have adequate alternative means of communicating with his attorney (e.g., written correspondence and in-person visits) because he did not allege otherwise. But that argument obscures the meaning of notice pleading, which requires only that a complaint contain facts sufficient to state a claim that is plausible on its face. *Skinner v. Switzer,* 562 U.S. 521, 530 (2011); *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013).

We offer no view of the ultimate merits of Lashbrook's claim but conclude only that his complaint states a claim that is "plausible on its face." Therefore, the case

should not have been dismissed. *See Ortiz*, 561 F.3d at 670; *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008).

We VACATE the dismissal of Lashbrook's complaint and REMAND the case for proceedings consistent with this order.