# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1358

TOBY DIGRUGILLIERS,

*Plaintiff-Appellant*,

*v.*

CONSOLIDATED CITY OF INDIANAPOLIS, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-00952-SEB-JMS—**Sarah Evans Barker**, *Judge*.

———————

ARGUED SEPTEMBER 12, 2007—DECIDED OCTOBER 30, 2007

———————

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff is the pastor of the Baptist Church of the West Side, a small congregation (30 to 50 members) that conducts church services in a building that it has leased in a part of Indianapolis zoned C-1. Under the Indianapolis zoning code, the church's building is a "religious use," defined as "a land use and all buildings and structures associated therewith devoted primarily to the purpose of divine worship together with reasonably related accessory uses, which are subordinate to and commonly associated with the primary

use, which may include but are not limited to, educa-
tional, instructional, social or residential uses." City of
Indianapolis Zoning Code § 735-751(b). A religious use
is forbidden in C-1 districts without a zoning variance. So
the City told the plaintiff that he would have to either
apply for a variance, which would require a proceeding
before the board of zoning appeals, see Ind. Code § 36-7-4-
918.4, or move his church. The plaintiff did neither, but
instead brought this suit; he is authorized by the charter
of the church to sue on the church's behalf.

The suit charges that the requirement of obtaining a
variance in order to make a religious use of land in C-1
districts violates the provision of the Religious Land
Use and Institutionalized Persons Act of 2000, 42 U.S.C.
§ 2000cc *et seq.*, that forbids a local government to "impose
or implement a land use regulation in a manner
that . . . . treats a religious assembly or institution on less
than equal terms with a nonreligious assembly or in-
stitution." § 2000cc(b)(1). The plaintiff moved for a pre-
liminary injunction that the district court denied on the
sole ground that the suit has negligible prospects of
success. The plaintiff appeals from that denial.

The Indianapolis zoning ordinance refers to C-1 districts
(the "C" standing for "Commercial") as "Office-Buffer
Districts," explaining that they are intended to be buffers
between residential districts on the one hand and entirely
commercial, or industrial, districts on the other hand.
City of Indianapolis Zoning Code § 732-201(a). Among
the land uses that the code permits in C-1 districts with-
out need for a variance are assisted-living facilities, au-
ditoriums, assembly halls, community centers, senior
citizens' centers, day-care centers, nursing homes, funeral
homes, radio and television studios, art galleries, civic

clubs, libraries, museums, junior colleges, correspondence schools, schools that teach data processing, and nurseries, together with "accessory uses and structures, subordinate, appropriate and incidental to the above permitted primary uses, including supportive services directly related to and in the same building with the primary use," plus various "accessory retail and service commercial uses," including a cafeteria or other restaurant serving only employees and guests, drugstores, florists, office-supply services, and newsstands.

The question is whether in requiring the Baptist Church of the West Side to obtain a variance in order to be permitted to lease space for its religious services in a district zoned C-1, the City is "treat[ing] a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." The district judge thought not, primarily because the zoning code defines a religious use to include not only the type of "accessory" uses permitted to C-1 users, but also residential uses, such as a rectory for the minister of the church, which are not permitted in districts zoned C-1. To allow religious uses in those districts without a variance would, therefore, the judge thought, give churches rights greater than rather than equal to those of secular users.

There is no indication that the plaintiff lives or intends to live, or that anyone else lives, in the building that the Baptist Church of the West Side has leased; indeed, the lease does not permit the property to be used as a residence. More important, the City may not, by defining religious use so expansively as to bestow on churches in districts in which it allows them to operate more rights than identical secular users of land have, justify excluding churches from districts in which, were it not for

those superadded rights, the exclusion would be discriminatory. The meaning of "religious assembly or institution" in the Religious Land Use and Institutionalized Persons Act is a question of federal rather than state law. *Konikov v. Orange County*, 410 F.3d 1317, 1324-25 (11th Cir. 2005) (per curiam); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1229-31 (11th Cir. 2004). It has to be. Otherwise the City could exclude churches from districts zoned residential by ordaining that a residential use of land does not include the grazing of sheep but a religious use does, and therefore the federal Act does not require the City to permit churches in residential zones, as to do so would give churches more rights than the other users of land in those zones have. Such an approach—in effect defining "religious assembly or institution" as a church plus a sheep farm—would be bootstrapping. This case, in which the City has in effect defined the term to mean a church plus a residence, is less extreme, but is equally opposed to the scheme of the federal Act. Whatever restrictions the City imposes on other users of land in C-1 it can impose on the Baptist Church of the West Side without violating the "equal terms" provision.

The City points out—inconsequently, as we shall see—that in districts zoned SU-1 ("Special Use") churches can locate without obtaining a variance. Some 4,044 acres in the City are zoned SU-1, which sounds like a lot until one remembers that the City of Indianapolis is coterminous with Marion County. The county occupies 400 square miles, and much of it is nonurban—in fact 20 percent is classified as agricultural. "Marion County Community Profile," www. savi.org/savii/comm_info/ Community_Profiles/ CNTY/18097/history.aspx (visited

Oct. 4, 2007). About 280 of the 4,044 acres zoned SU-1 have no structure on them, which the City argues provides plenty of opportunities for the Baptist Church of the West Side to build a church (not that it could afford to, in all likelihood, with such a tiny congregation). But there is nothing in the record about the price, ownership, topography, or location of these parcels. Maybe the reason there are no structures on them is that their location or something else about them makes them unsuitable for buildings in general or a church building in particular.

So the record compiled in the preliminary-injunction proceedings does not permit a conclusion that the City's discrimination against churches in C-1 districts is offset by the creation of a privileged zone for religious uses in SU-1. And anyway an offset could not eliminate the discrimination. The existence of alternative sites for a church is relevant only when a zoning ordinance is challenged as imposing a "substantial burden" on religious uses of land, *Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin,* 396 F.3d 895, 899-900 (7th Cir. 2005); *Midrash Sephardi, Inc. v. Town of Surfside*, *supra*, 366 F.3d at 1227-28; *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004), under a different section of the federal Act from the equal-terms section at issue in this appeal. 42 U.S.C. § 2000cc(a)(1). The equal-terms section is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1308 (11th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside*, *supra*, 366 F.3d at 1228-31. If proof of

substantial burden were an ingredient of the equal-terms provision, the provisions would be identical, which could not have been Congress's intent.

The district court gave another reason for its decision, however. Indiana law forbids the sale of liquor within 200 feet of a church, or pornography within 500 feet. Ind. Code §§ 7.1-3-21-11(b), 35-49-3-3. Allowing a church to locate in a C-1 district could therefore interfere with other land uses. Pornography might be sold by a newsstand, or liquor in a restaurant, both the newsstand and the restaurant being permissible accessory uses in C-1, and they might be within 200 and 500 feet of the church, respectively. There is no evidence that any such activity is going on within those radii of the Baptist Church of the West Side, but the reason may be that it would violate state law.

This reason for allowing the exclusion of churches from C-1 turns out to suffer from the same infirmity as the first one, the one based on the definition of religious use in the zoning ordinance. Government cannot, by granting churches special privileges (the right of a church official to reside in a building in a nonresidential district, or the right of the church to be free from offensive land uses in its vicinity), furnish the premise for excluding churches from otherwise suitable districts. The 200- and 500-foot protective zones give churches privileges that similarly situated secular users of C-1, other than schools, do not enjoy. The Supreme Court suggested in *Larkin* v. *Grendel's Den, Inc.*, 459 U.S. 116, 124 (1982), that churches may be granted such a privilege only if it is extended to "like institutions." See also *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 14-16 (1989); Edward H. Ziegler, Jr., *Rathkopf's Law of Zoning & Planning* § 29:4, p. 2 (4th ed. Supp. 2007).

If not, the grant may violate the establishment clause. Some of the institutions permitted by the Indianapolis ordinance in C-1 districts, but not given the benefit of protective zones, such as day-care centers, nursing homes, and junior colleges—not to mention an assembly hall that might be used by the Women's Christian Temperance Union—might well be thought institutions that are "like" churches so far as anything connected with the interests protected by zoning is concerned. If so, the disparity regarding protective zones would be another example of discrimination in favor of religion (with schools tossed in perhaps just to give the impression of doling out even-handed treatment to secular institutions that are like religious ones), which as we said cannot be a defense to a zoning exclusion challenged under the equal-terms provision of the Religious Land Use and Institutionalized Persons Act.

This case is unlike *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327 (1987), which upheld, against a challenge based on the establishment clause, Congress's exempting employees of religious organizations from Title VII's prohibition against religious discrimination in employment. The Court held that the discrimination in favor of religion was only apparent, that actually it created a level playing field with secular institutions because of characteristics of religious institutions that secular ones do not share, notably the role of faith as a criterion of employment. But it is not contended, or apparent to us, that a similar argument is available for the protective zones with which Indiana surrounds churches. Although many Baptist sects are strongly opposed to the drinking of alcoholic beverages, it does not follow that permitting the sale of such beverages in the vicinity of a Baptist

church would impair the church's effective operation as a religious institution any more gravely than it would impair the effective operation of a day-care center, which is to say, probably not gravely at all. Not that *Grendel's Den* settled the issue against a claim that the free exercise of religion might require barring the sale of alcohol near a church or other place of worship. The objection to the state law in that case was that it allowed a *church* to decide whether to permit liquor to be sold near it. The Court refused to allow a church a share in secular government.

It is irrelevant that the protective zones to which the district court pointed in upholding the City's exclusion of churches from districts zoned C-1 were commanded by the state, while the exclusion itself was commanded by the City. The City is part of the government of Indiana, and if it would violate the federal Act for the City to exclude churches from C-1 districts—and since the City does not argue that the state is *required* by the First Amendment to create protective zones around churches—the City may not exclude churches from those districts. For the federal Act treats state and local government interchangeably, 42 U.S.C § 2000cc-5(4)(A)(i), and Indianapolis's power to zone is conferred by state law. Ind. Code § 36-1-3. Contrary to a suggestion in *Cornerstone Bible Church v. Hastings*, 948 F.2d 464, 471 (8th Cir. 1991), a state cannot be permitted to discriminate against a religious land use by a two-step process in which the state's discriminating in favor of religion becomes a predicate for one of the state's subordinate governmental units to discriminate against a religious organization in violation of federal law. The exercise of a delegated power is normally and here imputed to the delegator.

So the plaintiff's claim that the City is violating the federal Act has at least some, and possibly great, merit. The district judge, having ruled that it had no possible merit, did not consider the other factors, besides the merits, that are germane to the decision whether to grant or deny a preliminary injunction. The judge would have been right to pretermit that inquiry had she been right that the claim had no merit; but we have seen that it has at least some merit, and no more is required to necessitate an inquiry into the balance of irreparable harms. *Cavel International, Inc. v. Madigan*, No. 07-2658, 2007 WL 2239215, at *4 (7th Cir. July 18, 2007). The balance seems to favor the plaintiff. If his church must vacate its premises while his case wends its way to completion, the church's religious activities will be hampered. It is hard to see what difference it can make to the City if the church is allowed to remain in its current premises until final judgment (by which we do not mean the Day of Judgment). The church has been in its present premises since the middle of 2005, without, so far as appears, causing any trouble to anyone, including other users of land in its vicinity. But striking the balance of irreparable harms (the harm to the plaintiff if preliminary relief is denied, the harm to the City if it is granted) is a task for the district court in the first instance.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*