In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1274

EAGLE COVE CAMP & CONFERENCE
CENTER, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

TOWN OF WOODBORO, WISCONSIN,
ONEIDA COUNTY, WISCONSIN, and
ONEIDA COUNTY BOARD OF ADJUST-
MENT,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:10-cv-00118-wmc — **William M. Conley**, *Chief Judge.*

ARGUED SEPTEMBER 10, 2013 — DECIDED OCTOBER 30, 2013

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Eagle Cove Camp & Conference
Center, Inc. ("Eagle Cove") appeals from the district court's
entry of summary judgment in favor of the Town of

Woodboro, ("Woodboro") Oneida County and the Oneida County Board of Adjusters (collectively "the County"). Eagle Cove alleged that Woodboro and the County's land use regulations, which prohibit them from running a year-round Bible camp on residentially zoned property, violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First and Fourteenth Amendments of the United States Constitution, and the Wisconsin Constitution. Eagle Cove also sought state certiorari review under Wisconsin Statute § 59.694(10). For the reasons set forth below, we affirm the decision of the district court.

## I. BACKGROUND

### A. *The Town of Woodboro and Oneida County*

Woodboro comprises approximately 750 residents and about 21,857 acres of land. Oneida County has 708,751 acres of land. Squash Lake is partially located in Woodboro. Pursuant to Wisconsin Statute § 60.62(1), Woodboro adopted a Land Use Plan in 1998, which seeks to "encourage low density single family residential development for its lake- and river-front properties." (R. 63–20 at 9.) The plan incorporated a survey Woodboro took that found the majority of the residents desired to maintain the town's rural and rustic character. In 2009, Woodboro adopted a Comprehensive Plan in accordance with Wisconsin Statute § 66.1001 that incorporates the aforementioned language.

The zoning around Squash Lake reflects the goals set forth in the plans and the survey. There are one hundred seventy-seven parcels of real estate on Squash Lake, and all but seven are zoned for single-family uses. The seven parcels that are not

zoned for single-family use are zoned for business and were grandfathered into the zoning plan as pre-existing uses during the initial zoning in 1976.

On May 8, 2001, Woodboro voluntarily subjected itself to the Oneida County Zoning and Shoreland Protection Ordinance ("OCZSPO"), which establishes zoning districts throughout the County. Towns must elect to be subordinate to the OCZSPO's provisions. In doing so, they relinquish zoning authority to the County.

According to the OCZSPO, religious land uses are permitted throughout the County and Woodboro. Year-round recreational and seasonal camps are permitted on thirty-six and seventy-two percent of the County, respectively. In addition, churches and religious schools are allowed on sixty percent of the land in the County. Churches and schools are permitted on nearly forty-three percent of the land in Woodboro and campgrounds (religious or secular) on approximately fifty-seven percent.

B. *The Proposed Bible Camp*

Eagle Cove sought to construct a Bible camp on thirty-four acres of property that they own on Squash Lake in Woodboro. Eagle Cove believes that their religion mandates that the Bible camp must be on the subject property. Eagle Cove also believes that they must operate the Bible camp on a year-round basis. Neither of these beliefs is in dispute.

The subject property's eastern parcels are zoned Single Family Residential and the western parcels are zoned Residential and Farming. As the OCZSPO states, "The purpose of the

Single Family Residential District is to provide an area of quiet seclusion for families. This is the County's most restrictive residential zoning classification. Motor vehicle traffic should be infrequent and people few." (R. 63–1 at 12.) The land was not specifically purchased for the construction of the proposed camp and has been owned by the same family since 1942.

C. *Petition for Rezoning and Conditional Use Permit*

On December 13, 2005, Eagle Cove filed a petition with Oneida County to rezone the subject property to a Recreational zoning district. The general reason provided for the rezoning was to permit construction of a Bible camp. The OCZSPO does not permit year-round recreational camps in Single Family Residential zoning districts. The County sent a copy of the rezone petition to Woodboro for its consideration on the matter. Beginning in February 2006, Woodboro held a series of meetings on the rezoning petition. After much discussion, Woodboro recommended that the County deny the petition. It found that the recreational camp was not consistent with the goals of maintaining the rural and rustic character of Woodboro and would conflict with the existing single-family development surrounding Squash Lake.

Following this recommendation, the County held several meetings and hearings regarding the zoning petition. The County denied the rezoning petition on the grounds that it would conflict with the majority single-family usage on Squash Lake and land use regulations set forth in the Woodboro Land Use Plan.

In doing so, the County considered the implications of RLUIPA and whether a denial would hinder Eagle Cove's right

to exercise their religion on the subject property. It found that a religious school or church could be constructed under existing zoning, that Eagle Cove could achieve its goals without rezoning by applying for a conditional use permit, and that the proposed Bible camp directly conflicted with the Single Family Residential zoning around Squash Lake. By resolution adopted on August 15, 2006, the County accepted the recommendation of the County Zoning Committee and denied the rezone petition.

In 2008, Eagle Cove sought to obtain a conditional use permit ("CUP") to construct its proposed Bible camp on the subject property. If permitted, the CUP would allow Eagle Cove to construct its Bible camp without requiring rezoning of the subject property. Eagle Cove attached an "Overall Site Plan" with the application, which included plans for a lodge in excess of 106,000 square feet. The proposed Bible camp would have a maximum capacity of 348 campers and also accommodate 60 people in outdoor camping sites.

Woodboro recommended that the County deny the CUP application. The Zoning Committee issued a staff report detailing its reasons for denying the application. Once again, the report found that the proposed Bible camp did not conform to the zoning goals in the district. It also stated that the proposed use was incompatible with the single-family residential use of adjacent land to the subject property, the purposes and nature of the Single Family Residential district, and Woodboro's 2009 Comprehensive Plan. The County Zoning Committee agreed with the report and denied the CUP application. Finally, Eagle Cove appealed to the Oneida

County Board of Adjusters, which also found that the proposed use was impermissible.

D. *District Court Proceedings*

On March 10, 2010, Eagle Cove filed an action in the United States District Court for the Western District of Wisconsin. They filed an amended complaint on April 27, 2010, and asserted that the land use regulations by Woodboro and Oneida County deprived Eagle Cove of rights set forth under various provisions in RLUIPA, the First and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and the Wisconsin Constitution. They also petitioned for a writ of certiorari to the Wisconsin Supreme Court. All parties moved for summary judgment.

The district court granted summary judgment for the County and Woodboro on all counts.[1]

The district court found that the RLUIPA total exclusion claim lacked merit as neither the County nor the Town prohibited religious assemblies in their jurisdictions. It found that Eagle Cove could use their land for religious assembly, albeit not in the form of a year-round Bible camp. Citing our opinion in *Vision Church v. Village of Long Grove*, the district court held that the total exclusion provision of RLUIPA requires the complete and total exclusion of activity protected by the First Amendment, not just prohibition of a certain type of religious activity. 468 F.3d 975, 989-90 (7th Cir. 2007). The

---

[1] We need not address the Rehabilitation Act or the Americans with Disabilities Act claims as they were not appealed by Eagle Cove.

district court went on to disagree with Eagle Cove's contention that Woodboro itself exercises jurisdiction over the land use regulations within its borders, finding that Woodboro has only an advisory role in the overall process and that it is the County that exercises jurisdiction over the land use regulations on the subject property.

In considering Eagle Cove's unreasonable limitation claim under RLUIPA, the district court found that Eagle Cove's proposed use of implementing a year-round Bible camp would be permitted in thirty-six percent of Oneida County and that seasonal recreational camps would be permitted on seventy-two percent of the County. Additionally, Woodboro's planning scheme allows for seasonal recreational camps on roughly fifty-seven percent of its land. The County and Woodboro did not unreasonably limit religious assemblies in their respective jurisdictions, but rather, Eagle Cove's insistence on locating the year-round camp on the subject property impeded the exercise of their religious beliefs.

The district court next addressed Eagle Cove's RLUIPA substantial burden claim. Despite the fact that Eagle Cove has spent considerable amounts of time and resources on the various permits described above, the district court found that this did not entitle them to relief under the substantial burden provision of RLUIPA. It held that simply having a religious purpose does not prevent the County from placing reasonable constraints on the proposed camp. Citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (hereinafter "*CLUB*"), the district court emphasized that, to qualify under this provision, the burden placed on religion must indeed be substantial. To find otherwise would allow

even the slightest of obstacles to trigger RLUIPA's substantial burden provision. Eagle Cove specifically rejected alternative sites and methods for exercising their religion. As the district court observed, the scope of Eagle Cove's vision, not the OCZSPO, hindered their religious exercise.

The district court, using the same reasoning as in its substantial burden analysis, found that the free exercise claim under the First Amendment and the claim under the Wisconsin Constitution Article 1, § 18 also failed.

Eagle Cove filed this timely appeal.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo. *See Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2006). To determine whether summary judgment is appropriate, all conflicting evidence and reasonable inferences drawn from it are construed in favor of Eagle Cove. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). Summary judgment is proper if, in considering all evidence in favor of the non-moving party, we find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A. *Total Exclusion Claim*

Eagle Cove argues that Woodboro has violated RLUIPA's total exclusion provision, which prohibits governmental land use regulations from totally excluding religious assemblies from a jurisdiction. 42 U.S.C. § 2000cc(b)(3)(A). Eagle Cove's

total exclusion argument is predicated, and in fact depends, on the assumption that Woodboro has jurisdiction to implement land use regulations on the subject property. This stems from the fact that year-round recreational camps are permitted throughout the County (rendering Eagle Cove's total exclusion claim obsolete), but not allowed within Woodboro's borders.

"Jurisdiction generally describes any authority over a certain area or certain persons … Smaller geographic areas, such as counties or cities, are separate jurisdictions to the extent that they have powers independent of the federal and state governments."(Appellant's Br. at 22–23), *citing West's Encyclopedia of American Law* (2011). *Black's Law Dictionary* defines jurisdiction as: "A geographic area within which political or judicial authority may be exercised." 867 (9th ed. 2009). Neither of these definitions yields any support for Eagle Cove's contention that Woodboro retains jurisdiction over land use regulations within the town.

Jurisdiction requires that a municipality is able to exercise control or authority over a designated area. Indeed, Woodboro does retain jurisdiction on numerous matters of local governance that are within its control. The town board can, for example, regulate bowling centers, dance halls, and roadhouses maintained in commercial facilities. Wisconsin Statute § 60.23(10). It can dispose of dead animals or contract with a private disposal facility to do the same. Wisconsin Statute § 60.23(20). Town meetings may be called to regulate the appropriation of money. Wisconsin Statute § 60.10(1)(3).

In this case, Woodboro was able to exercise its jurisdiction in approving the OCZSPO. "A county ordinance enacted

under this section shall not be effective in any town until it has been approved by the town board … The ordinance shall supersede any prior town ordinance in conflict therewith or which is concerned with zoning[.]" Wisconsin Statute § 56.69(5)(c). Woodboro chose to be subordinate to Oneida's zoning ordinance, and thereby relinquished its jurisdiction over land use regulations to the County.

Eagle Cove argues that Woodboro's implementation of its Land Use and Comprehensive Plans is proof that the town maintains sufficient control over the zoning regulations. The record suggests otherwise. Though Woodboro created the aforementioned plans, these were not binding on the County's ultimate zoning decisions. Whether or not the town approves of a change in zoning is merely one of the factors considered by the County in making its determination. Woodboro serves a limited, consultative role in determining the town's zoning regulations. The weight given to Woodboro's recommendation is at the discretion of the County. The town board itself acknowledged its advisory role in reviewing Eagle Cove's CUP application: "[T]he Town of Woodboro … hereby provides an *advisory recommendation* to the Oneida County Planning and Zoning Department that the [CUP] Application for Eagle Cove … be denied." (R. 62–48 at 2.) (emphasis added). Thus, it is clear that the County, not Woodboro, exercises jurisdiction.

For this reason, Eagle Cove's total exclusion claim must fail. There is ample evidence in the record to suggest that operating a year-round Bible camp would be possible in many parts of Oneida County. *See supra* Part I.A. In *Vision Church*, we held that the total exclusion provision of RLUIPA prohibits only "the complete and total exclusion of activity or expression

protected by the First Amendment." 468 F.3d at 989. It is undisputed that Eagle Cove could construct a year-round Bible camp on thirty-six percent of the land in Oneida County. It is further undisputed that Eagle Cove could construct a religious church or school on the subject property. This is hardly a complete and total exclusion.

B. *Substantial Burden and Free Exercise Claims*

Eagle Cove also seeks relief under the substantial burden provision of RLUIPA, which requires land use restrictions on religious assemblies be in furtherance of a compelling governmental interest and use the least restrictive means possible to achieve that interest. 42 U.S.C. § 2000cc(a). Eagle Cove must demonstrate that the zoning in Oneida County imposes a substantial burden on the exercise of religious rights and that the County did not have a compelling reason in creating the burden.

A substantial burden under RLUIPA "is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise … effectively impracticable." *CLUB*, 342 F.3d at 761. The burden must be truly substantial, to hold otherwise would permit religious organizations to supplant even facially-neutral zoning restrictions under the auspices of religious freedom. *See Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) ("Unless the requirement of substantial burden is taken seriously, the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind.")

There are numerous locations within Oneida County for Eagle Cove to place its Bible camp. *See supra* Part I.A. Eagle Cove concedes that there are four tracts of land, out of the ten put forth by the County, which would be suitable for their proposed camp. (Appellant's Br. at 33.) Despite this admission, Eagle Cove has insisted from the onset of this litigation that the camp must be built on the subject property. In fact, they have never even looked into operating the Bible camp on any other land in Oneida County, though several properties in the County that could have supported a year-round camp have been sold since 2006. It is not the land use regulations that create a substantial burden, but rather Eagle Cove's insistence that the expansive, year-round Bible camp be placed on the subject property. *See Petra*, 489 F.3d at 851 ("When there is plenty of land on which religious organizations can build churches … in a community, the fact that they are not permitted to build everywhere does not create a substantial burden.").

The OCZSPO itself applies a neutral land use regulation by zoning the area around Squash Lake, including the subject property, as a Single Family Residential district. The zoning occurred before Eagle Cove expressed any interest in constructing a Bible camp. Eagle Cove was given the opportunity to seek rezoning and a CUP application, both of which were denied. They also had the opportunity to seek out other properties on which to build their camp, but chose not to do so. Rather, Eagle Cove brought this suit. Though they claim to seek the protections of RLUIPA, in reality Eagle Cove seeks nothing more than an exception from the OCZSPO on the basis of their religious beliefs. RLUIPA is meant to protect religious

freedoms from impermissible land use regulations, it is not meant to allow religious exercise to circumvent facially-neutral zoning regulations. Eagle Cove is not requesting relief from an unjust law or ordinance implemented by the County that inhibits their religious activity; rather, they seek special treatment on the basis of their religious purpose. *See CLUB*, 342 F. 3d at 762 ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise").

Eagle Cove also maintains that Oneida County and the Town of Woodboro caused considerable delay, uncertainty, and expense in the execution of the rezoning application they submitted by leading them to believe that their permits would be granted. They rely on our holding in *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005), which found a substantial burden under RLUIPA where there was considerable "delay, uncertainty and expense." We held that "[i]f a land-use decision … imposes a substantial burden on religious exercise … and the decision maker cannot justify it, the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision." *Id*. at 900. In *New Berlin*, however, there were indicia of bad faith by the City that led the Court to find no compelling governmental interest that the City could put forth to justify its substantial burden on the Church. *Id*. at 899 ("The repeated legal errors by the City's officials casts doubt on their good faith"). That is not the case here.

First, the fact that Eagle Cove has spent considerable time and money on various applications for rezoning does not constitute, *prima facie*, a substantial burden. *See, e.g., CLUB*, 342

F.3d at 761 ("That [Appellants] expended considerable time
and money … does not entitle them to relief under RLUIPA's
substantial burden provision"). Further, it is clear from the
record that the Town and County maintained their position
throughout the rezoning application process that, while
religious exercise would be allowed in the form of a church or
school on the subject property, they would not permit the
construction of a year-round recreational camp. The County
had a compelling interest in preserving the rural and rustic
character of the Town as well as the single-family development
around Squash Lake. To do this, it zoned the area around
Squash Lake for single family purposes four years before Eagle
Cove first sought to build the camp. The zoning regulations do
not seek to inhibit Eagle Cove's religious activity; they merely
encourage an area of quiet seclusion for families around
Squash Lake.

Eagle Cove's Free Exercise claim must fail for the same
reasons. We have previously noted that "both the Free Exercise
Clause and RLUIPA provide that, if a facially-neutral law or
land use regulation imposes a substantial burden on religion,
it is subject to strict scrutiny." *Vision Church*, 468 F.3d at 996. As
in *Vision Church*, we apply our substantial burden analysis to
deny Eagle Cove's Free Exercise claim. *Id.* ("Given the similari-
ties between RLUIPA § 2(a)(1) and First Amendment jurispru-
dence, we collapse [appellant's] claims for the purpose of this
analysis; this approach seems most consistent with post-
RLUIPA case law").

C. *Unreasonable Limitations Claim*

Eagle Cove also contends that there is at least a genuine issue of material fact as to whether reasonable opportunities exist to build the proposed Bible camp within the County. Reasonableness is determined "in light of all the facts, including the actual availability of land and the economics of religious organizations." *Vision Church*, 468 F.3d at 990; *see also Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548, 560 (4th Cir. 2013) ("RLUIPA's unreasonable limitation provision prevents government from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction"). It cannot be said that the land use regulations in Oneida County "unreasonably limit[] religious assemblies, institutions, or structures[.]" 42 U.S.C. § 2000cc(b)(3)(B). The evidence clearly suggests otherwise.

The OCZSPO has a neutral purpose that incorporates Woodboro's Comprehensive and Land Use Plans. It seeks to uphold the rural and rustic nature of the town and the area surrounding Squash Lake. Nonetheless, it allows for religious assemblies throughout Oneida County and on the subject property. Eagle Cove has had reasonable opportunity not only to seek rezoning and a conditional use permit, but also to look for other land in Oneida County that would serve its purpose. It chose not to do so. While it may be said that Eagle Cove's insistence on a year-round Bible camp on the subject property without seeking alternatives is unreasonable, Oneida County's zoning regulations that seek to preserve the character of the area around Squash Lake are not.

D. *Equal Terms Claim*

Eagle Cove also argues that the OCZSPO violated the equal terms provision of RLUIPA, which prevents governmental land use regulations that treat religious institutions on less than equal terms with similarly situated institutions that do not have a religious affiliation. 42 U.S.C. § 2000cc(b)(1). "The equal-terms section is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on religious uses." *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 616, 616 (7th Cir. 2007). In determining whether a claim exists under the equal terms provision, we look to the zoning criteria rather than the purpose behind the land use regulation. *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 371 (7th Cir. 2010). And "if religious and secular land uses that are treated the same from the standpoint of an accepted zoning criterion, … that is enough to rebut an equal-terms claim[.]" *Id.* at 373.

The Single Family Residential zoning district, wherein the subject property lies, is the most restrictive district in the county and ensures quiet seclusion for families living in the area. While this zoning district permits certain religious and secular assemblies, recreational camps are prohibited outright, regardless of religious affiliation. It is clear that the OCZSPO does not treat religious land uses, in particular year-round Bible camps, less favorably than their secular counterparts. The County established the land use regulations to ensure that the single-family environment around Squash Lake remains intact. To achieve this goal, the OCZSPO forbids year-round recreational camps outright. Unfortunately for Eagle Cove, this

means that they will have to place their Bible camp elsewhere.

*E. Wisconsin Constitutional Claim*

Eagle Cove believes that the protection offered under Article 1, § 18 of the Wisconsin Constitution is greater than that offered under federal law. Wisconsin applies a compelling state interest/least restrictive alternative test when a claim is brought challenging a state law that violates an organization or individual's freedom of conscience. *Coulee Catholic Schools. v. Labor and Industry Review Comm'n*, 768 N.W.2d 868, 886 (Wis. 2009). The test requires that the organization prove it has a sincere religious belief and that such belief is burdened by the state law at issue. The burden is then shifted to the state to rebut the claim by showing a compelling state interest that cannot be served by a less restrictive alternative. *Id*.

Even accepting that Eagle Cove has a sincere belief and that it is burdened by the OCZSPO, the County has demonstrated that it has a compelling state interest in preserving the rural nature around Squash Lake achieved by the least restrictive means possible (a neutral zoning ordinance). Like any entity, religious organizations are subject to general laws for taxes, licensing, social security, and the like that are "normally acceptable." *Id*. at 887. The zoning ordinance at issue here is generally applicable to all residents within Oneida County and thus would qualify as "normally acceptable" under Article I, § 18 of the Wisconsin Constitution.

### III. CONCLUSION

Considering all facts in favor of Eagle Cove, we find that all claims under RLUIPA as well as the federal and Wisconsin

constitutions lack merit. Consequently, we AFFIRM the district court's order granting Woodboro and the County's motion for summary judgment.