NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 21, 2015[*]
Decided April 22, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-3623

| | |
|---|---|
| RUFUS WEST, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| *v.* | No. 11-cv-687-slc |
| GREGORY GRAMS, et al., | Stephen L. Crocker, |
| *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

Rufus West is a Wisconsin inmate formerly incarcerated at Columbia Correctional Institution, a maximum-security prison, and currently incarcerated at Green Bay Correctional Institution. West, who is Muslim and uses the religious name Mansa Lutalo Iyapo, sued members of Columbia's staff and the Secretary of the Wisconsin Department of Corrections, seeking damages and injunctive relief for perceived violations of the First Amendment, *see* 42 U.S.C. § 1983, and the Religious

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Land Use and Institutionalized Persons Act, *see* 42 U.S.C. § 2000cc–1. First, he alleged, over a multi-year period staff impeded his free exercise of religion by canceling Islamic services at Columbia when Muslim staff or outside volunteers were unavailable to lead the services, rather than allowing services to proceed with inmate leaders. Second, West asserted, after he complained that his evening meal was being delivered too late for him to break his Ramadan fast right at sunset, Columbia staff retaliated by scheduling meal delivery during Ramadan at the latest possible hour. A magistrate judge, presiding by consent, granted the defendants' motion for summary judgment. Because a finder of fact could not reasonably conclude from West's evidence that the defendants burdened his religious exercise under the First Amendment or retaliated against him because of protected speech, we affirm the dismissal of his constitutional claims. But we disagree with the magistrate judge's conclusion that West's transfer to Green Bay mooted his RLUIPA claim, and on that claim we remand for further proceedings.

Since we are reviewing a grant of summary judgment, we construe the evidence and draw all reasonable inferences in favor of West, the opposing party. *See Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013). Wisconsin's Department of Corrections requires that "[c]ongregate religious services" and religious study groups held in Wisconsin prisons "be led by an approved spiritual leader/clergy, volunteer, or Chaplain." This policy, which dates to 2001, states expressly that no inmate may "lead" or "conduct" religious services or groups. The Columbia Security Director explained the policy's rationale: Allowing inmates to lead religious activities could create "a perception of authority over other inmates," "allow an inmate to influence other inmates' actions," obscure the "necessary distinction between staff and inmates," and permit inmates to use religious services as a cover for gang activity.

Columbia uses outside volunteers to lead some Islamic services. Although the Department of Corrections employs two Muslim religious leaders, they are not assigned to Columbia and are unable to lead services regularly at that prison. Instead, Columbia's chaplain, who is Protestant, recruits Muslim volunteers from the community to lead Islamic services. Those services include Jumu'ah, a group prayer service held on Fridays; Talim (or Taleem, but we adopt West's spelling), a religious study period generally held weekly; and Eid al-Fitr, the services and feast that mark the conclusion of Ramadan the month during which Muslims fast from sunrise to sunset.

According to West, attending Jumu'ah every Friday is a mandatory tenet of Islam, and participating in Talim, though not "obligatory," is necessary. At Columbia, though, a shortage of volunteers resulted in one or both of these services being cancelled during

more than 150 weeks of the 6-year period ending with West's transfer to Green Bay. In contrast, the defendants do not dispute that Christian services rarely were cancelled in the same period. West also says that at Columbia the Eid al-Fitr celebration was scheduled late in 2007, 2008, 2009, and 2012—in his view, stripping the celebration of its religious significance—because an outside volunteer was unavailable to lead the celebration.

West also accuses the prison chaplain, a shift captain, and the food service administrator of retaliating after he complained about the timing of meal service during Ramadan. He explains that he alerted the chaplain that meals were being delivered to Muslim inmates well after sunset during Ramadan, and he asked the chaplain for assistance in getting an earlier delivery time, such as at 7:30 p.m. After this conversation the chaplain issued a memo announcing that evening meals during Ramadan would be served at 8:30 p.m. West concluded that the decision to serve supper at 8:30 p.m.—the latest possible time to serve meals to inmates—had been selected to retaliate for his complaint about meal timing.

The defendants moved for summary judgment on each of West's claims. First, they argued that the policy precluding inmates from leading religious services does not substantially burden West's rights under RLUIPA. Although the defendants conceded that Jumu'ah was not offered each week at Columbia, they explained that in the past the service typically was held twice monthly and that the Columbia chaplain regularly arranged a Talim study group through an electronic medium during weeks that a volunteer was unavailable to lead Jumu'ah. And when the usual volunteers could not conduct Jumu'ah for several weeks in a row, the chaplain explained, he had contacted multiple Muslim groups or leaders seeking more volunteers, but without success. More recently, the Columbia chaplain had found a volunteer to lead Jumu'ah services and a Talim group every other Friday, as well as a Talim group and Zuhr prayer on Tuesdays of the intermediate weeks. In addition, the defendants noted another policy of the Department of Corrections that enables West to practice his religion in a variety of ways, including through special diet, individual study, personal meditation, religious books, pastoral visits, and abstention from work on religious days of observance. Further, the Eid al-Fitr feast was always held within the timeframe established by the Department of Corrections Religious Practices Advisory Committee. In any event, the defendants contended, the volunteer policy is the least restrictive means to achieve a compelling interest of maintaining security.

Second, the defendants contended that West's right to free exercise under the First Amendment had not been violated because the challenged policy was applied to all religious groups, and was reasonably related to prison security. The defendants also asserted that they were entitled to judgment as a matter of law on West's retaliation claim because he had not engaged in a constitutionally protected activity, nor had he shown that the scheduling of the meal time at 8:30 p.m. would deter future protected activity. Finally, the defendants contended that they were entitled to qualified immunity on all of West's claims, including his RLUIPA claim.

West countered with his own motion for summary judgment. He argued that the challenged policy, although facially neutral, is discriminatory in practice because Muslim inmates are affected disproportionately. West noted that all maximum-security facilities in Wisconsin have Christian chaplains and are located in communities with a plethora of available Christian volunteers, so Christian services rarely are cancelled. Moreover, he argued, the defendants had not offered convincing evidence that forbidding inmates to lead religious services is necessary to promote prison security. Any safety concern is minimal, West asserted, because prayer services are held in an area with large windows and cameras allowing guards to monitor the activities. In addition, West produced affidavits from two prisoners at Columbia who aver that from 2004 until 2008 they attended Jumu'ah services led by an inmate. As for his retaliation claim, West explained that the decision to set the meal time at 8:30 p.m. had "haunted" him and deterred him from filing future complaints.

In reply the Columbia chaplain conceded that the former program supervisor at Columbia had acknowledged that "she did, on occasion, allow the inmates to lead the Jumah prayer" and that "they had to rotate the leader of the prayer among the group." The chaplain recalled that the practice was ended because "the inmates refused to cooperate with the rotation," leaving the same inmate to lead the service each time and, according to the chaplain, leaving one inmate in an unacceptable "position of authority and power over the other inmates." The defendants also included an affidavit from the DOC Administrative Policy Advisor who justified the policy, in part, by stating that there had been "much negative feedback from facilities across the United States that have allowed inmate-led religious services." He cited instances of security breaches related to inmate-led services in Pennsylvania, Michigan, and Nebraska.

In ruling for the defendants, the magistrate judge first reasoned that, because this court had rejected identical free-exercise claims in the past, the defendants were entitled to qualified immunity. The magistrate judge then rejected the RLUIPA claim on the

belief that, for that claim too, the defendants were shielded by qualified immunity. The judge expressed uncertainty whether the defendants had substantially burdened West's exercise of religion under the more protective RLUIPA standard, but reasoned that they did not violate any clearly established right by enforcing the challenged policy. Finally, the judge rejected West's retaliation claim with the explanation that moving the meal time to 8:30 p.m. could not have deterred an inmate of ordinary firmness from lodging future grievances.

Four days after this ruling, the defendants alerted the magistrate judge that injunctive relief is the sole remedy for a RLUIPA claim, *see Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012), and, thus, qualified immunity cannot be a defense, *see Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012). Instead, they argued, the judge should revise his decision to reject the statutory claim on the ground that the challenged policy had not substantially burdened West's exercise of his religion. Meanwhile, almost six months after the defendants had raised this concern, West was transferred to Green Bay. West notified the clerk of court about his transfer, and only then did the magistrate judge act on the defendants' request for a revision to the RLUIPA analysis. But instead of addressing the claim on the merits, as the defendants had asked, the judge concluded that the RLUIPA claim had been mooted by West's transfer. As far as we can tell from the record, that contention had never been made by the defendants.

On appeal West challenges the adverse decision on each of his claims, but two of those claims require little discussion. It has never been clearly established that inmates have a right to inmate-led group worship under the First Amendment. In fact, we have rejected this argument on nearly identical facts, where non-inmate volunteers are unavailable and prison administrators justify the restriction for security reasons. *See Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988); *Hadi v. Horn*, 830 F.2d 779, 784–85 (7th Cir. 1987); *see also Baranowski v. Hart*, 486 F.3d 112, 120–22 (5th Cir. 2007); *Spies v. Voinovich*, 173 F.3d 398, 402, 405–06 (6th Cir. 1999). West cites no authority casting doubt on this established precedent. As for West's retaliation claim, his appeal is patently frivolous. We can ignore that Ramadan falls at different times from year to year, and that in some years the 7:30 p.m. meal time requested by West would fall *before* sunset. In fact, in 2011 the 8:30 p.m. meal time ranged from slightly before sunset to 33 minutes after, and in 2012 it ranged from 8 to 49 minutes after sunset. More importantly, we agree with the magistrate judge that setting the meal time an hour later than West had requested would not have deterred an inmate in his position from engaging in future protected speech. *See Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011). As we

said in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), we would "trivialize the First Amendment" by holding that harassment for exercising a First Amendment right is "always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." And the change in meal time surely did not deter West, who in the following two years submitted no less than 100 grievances at Columbia.

That brings us to the RLUIPA claim, which is more substantial. As a starting point, West asserts that the magistrate judge erred in dismissing the claim as moot because, West surmises, the defendants transferred him to Green Bay in retaliation for filing this lawsuit and with the express purpose of rendering the RLUIPA claim moot. According to West, administrators at Columbia had said he would remain there for another year, yet soon after transferred him to Green Bay. But West's suspicions rest entirely on speculation, not evidence, and do not persuade us that corrections officials moved him to Green Bay in order to moot his RLUIPA claim. The defendants, after all, had raised a concern about the magistrate judge's mistaken reliance on qualified immunity five months before West was transferred, and even after the transfer it was the judge, not the defendants, who brought up the question of mootness.

That we see nothing untoward in the defendants' conduct, however, does not mean that we agree with the magistrate judge's determination of mootness or with the defendants' support of that ruling on appeal. Under RLUIPA the remedy available to West was limited to declaratory or injunctive relief. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1660 (2011); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir. 2009). And though a prison transfer might moot a claim for injunctive relief if the transfer means that the inmate no longer is laboring under the allegedly unconstitutional policy or practice, *see Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009), that is not the case here. West's lawsuit challenges under RLUIPA a system-wide Department of Corrections policy that applied at Columbia, still applies at Green Bay, and—unless modified—will apply wherever West is next sent until his release. In fact, the defendants do not even assure us that they have no present intention to transfer West back to Columbia in the near future. Moreover, while Green Bay has seen more success in recruiting outside volunteers to lead services for Muslim inmates, that good fortune is not guaranteed. The defendants have admitted that securing Muslim volunteers to lead services has been a significant challenge over the course of many years, and we are given no reason to conclude that the complained-of conduct won't be resumed. *See Vincent v. City Coll. of Chi.*, 485 F.3d 919, 925 (7th Cir. 2007); *Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994).

The magistrate judge thus erred in dismissing this statutory claim as moot. That mistake, coupled with the judge's initial mistake in thinking that qualified immunity barred the RLUIPA claim, means that the claim has yet to be addressed on the merits. Under RLUIPA, the plaintiff has the initial burden to demonstrate that a challenged prison policy substantially burdens the exercise of his religious beliefs. *See* 42 U.S.C. § 2000cc-2(b); *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). RLUIPA applies to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). In the past we have described a "substantial burden" as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Eagle Cove Camp & Conference Ctr., Inc. v. Wooboro*, 734 F.3d 673, 680 (7th Cir. 2013). After this appeal was briefed, however, we concluded that this definition is incompatible with *Holt* and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). The correct standard, we explained, is whether a particular restriction "seriously" violates or contradicts an inmate's religious beliefs. *Schlemm v. Wall*, No. 14-2604, 2015 WL 1787400, at *2 (7th Cir. Apr. 21, 2015). Whether or not West satisfied that initial burden is significant because, as far as the current record shows, a jury could find that the defendants did not offer persuasive evidence that the existing policy serves a compelling interest in prison security, or, if it does, that the policy in its present form is the least restrictive means of serving that interest. *See* 42 U.S.C. § 2000cc–1; *Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008).

We do not doubt that a prison's interest in order and security is compelling. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). But to ensure that prison policies further that compelling interest, a stated security concern must be "grounded on more than mere speculation, exaggerated fears, or post-hoc rationalizations." S. Rep. No. 103-111, at 10 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1900. And here the defendants did little to back up their assertion that the challenged policy is necessary, much less the least-restrictive means of accomplishing their aim of preserving security while still allowing Muslim adherents to worship on equal footing with other religions. In fact, what little evidence the defendants offered was cut down by their admission that in the past the volunteer policy had not been enforced and that Muslim inmates were allowed to lead religious services on a rotating basis. The stated rationale for ending that practice was, not that inmate leadership sparked hostility among inmates or toward prison staff, but that not all inmates were willing to take a turn leading the group. This merely demonstrates that the inmates could not agree on a leadership rotation that satisfied prison officials. It does not show that prison security compelled a broad restriction on inmate-led services.

So we come back to the question whether West met *his* burden of establishing that the policy against inmates leading religious services substantially burdens the exercise of his religious rights. The magistrate judge did not attempt to resolve that question even under our previous standard, and the parties have not had an opportunity to file briefs discussing the impact of *Schlemm*. So rather than decide the question now, we conclude that the better course is to let the magistrate judge address the issue in the first instance. At the same time, the court may exercise its discretion to receive additional evidence on both this issue and the defendants' security justification for the policy.

Accordingly, the dismissal of West's claim under RLUIPA is VACATED, and the case is REMANDED for further proceedings on that claim. In all other respects, the judgment is AFFIRMED. On remand the district court should substitute the current director of the Department of Corrections as the named defendant on West's claim for injunctive relief under RLUIPA.